**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ELIZEU BARBOSA OLGUINS,

Petitioner,

v. Case No. 2:26-cv-03396 KWR-KRS

WARDEN, *Otero County Processing Center,*
MARKWAYNE MULLIN*, Secretary of the Department of Homeland Security, et al.,*
DAVID VENTURELLA, *Acting Director,* Immigration and Customs Enforcement,
MARY DE ANDA-YBARRA, *Field Office Director,*

Respondents.

## ORDER GRANTING IN PART HABEAS PETITION

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (**Doc. 1**). Petitioner challenges his arrest by ICE officials and his immigration detention pending the adjudication of his removal. For the reasons stated below, Petitioner's Petition is **GRANTED IN PART.**

## BACKGROUND

Petitioner is a citizen of Brazil in ICE detention at the Otero County Processing Center. He has lived in the United States since March 2020, when he was admitted under an F-2 nonimmigrant status visa. Doc. 1 at 7. He was authorized to remain until December 10, 2021. *Id.* He has family in the United States and runs a business.

Petitioner was taken into immigration custody on September 13, 2026 during a traffic stop. He asserts he was not provided a Form I-200 warrant for his arrest. Petitioner's counsel also states that no warrant was provided to her.

Petitioner has no criminal history. Petitioner's counsel appears to assert he will be eligible to adjust status as the parent of a United States citizen upon his daughter's naturalization. As of the filing of the petition, however, it appears his daughter is not a United States citizen.

He received a bond hearing on October 6, 2026. The immigration judge denied bond, reasoning that he is a flight risk as follows: "Flight risk - Respondent entered seven years ago and overstayed his visa. No relief filed and none readily available. Therefore, flight risk per *Matter of A-L-S-*." Doc. 1-7 at 2.

**LEGAL STANDARD**

Petitioner seeks release from detention under a habeas statute, 28 U.S.C. § 2241. The Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88). Exhaustion requirements do not apply to habeas petitions under § 2241 challenging immigration detention. *Id.*

**DISCUSSION**

## I. <u>Petitioner's warrantless arrest merits his release</u>.

Because ICE detained petitioner within the borders of the United States and because petitioner is not subject to a final order of removal, petitioner's detention is governed by 8 U.S.C. § 1226. *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026). Section 1226(a) provides that, "*[o]n a warrant issued by the Attorney General*, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Similarly, Respondents' regulations appear to require a warrant prior to arrest. *See, e.g,* 8 CFR § 236.1(b), 1236.1(b). Here, Petitioner states that he was not provided a warrant at his arrest, and Respondents do not assert that he was arrested pursuant to a warrant. Respondents' failure to rebut Petitioner's allegation that no warrant was issued for his arrest leads the undersigned to conclude that no such warrant existed. Because § 1226(a) requires a warrant prior to detention, Petitioner may not be detained under § 1226(a).

There are exceptions to § 1226(a)'s warrant requirement. Pursuant to 8 U.S.C. § 1357(a)(2), immigration officials have authority without a warrant:

> to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2). Under § 1357(a)(5), an immigration officer may also make a warrantless arrest:

> (A) for any offense against the United States, if the offense is committed in the officer's or employee's presence, or
> (B) for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony,

> if the officer or employee is performing duties relating to the enforcement of the immigration laws at the time of the arrest and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest.

8 U.S.C. § 1357(a)(5). Here, Respondents do not argue or assert facts establishing that a warrantless arrest under this statute was justified.

The Government's failure to comply with the statute and its implementing regulations violated procedural due process and *Accardi*. *See Abedi v. Carter,* No. 25-3179, -- F.4th --, 2026 WL 3149141, at *24 (10th Cir. Oct. 21, 2026) (addressing failure to follow regulations in revocation of order of supervision). The Respondents' failure to issue a warrant under § 1226(a) and its implementing regulations "involve[d] more than mere ... procedural irregularities," *Id.* (citation omitted). Rather, the Government failed to comply with a statute or regulations protecting "fundamental statutory or constitutional rights of parties appearing before it." *Id.* (quoting *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 180 (3d Cir. 2010)); *see also United States v. Caceres*, 440 U.S. 741, 749 (1979) (noting that the Court had previously invalidated a deportation order because the government failed to comply with regulatory "rules [that] were designed 'to afford [the noncitizen] due process of law' by providing 'safeguards against essentially unfair procedures' "). "The Government's failure to comply with a regulation protecting [the petitioner's] due process rights thus merit[s] invalidation of the challenged agency action without regard to whether the alleged violation has substantially prejudiced [him]." *Abedi,* 2026 WL 3149141, at *24. This failure to comply with the statute and regulation protecting Petitioner's due process rights merits invalidation of the agency action – his arrest. *See Abedi,* 2026 WL 3149141, at *24 (failure to revoke order of supervision prior to detention merited release).

Generally, the Court has authority to release Petitioner. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (habeas is "a remedy for unlawful executive detention," and the "typical remedy is, of

course, release"); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (Federal district courts have broad equitable powers to craft habeas relief); 28 U.S.C. § 2243 (District courts have the power and authority to dispose of habeas corpus matters "as law and justice require"). In similar circumstances where respondents failed to show they lawfully arrested petitioners without a warrant, district courts have ordered release. *See Corona Pulgar v. Baltazar,* No. 26-CV-05274-PAB, 2026 WL 3301062, at *2 (D. Colo. Nov. 2, 2026) (collecting cases). Here, the Court finds that release is the appropriate remedy.

**II. Petitioner's detention hearing was sufficiently individualized.**

Petitioner appears to assert that his bond hearing violated due process because it was not individualized. The Court disagrees. Generally, the Court lacks jurisdiction to review a discretionary determination by an immigration judge in a bond decision. The release or bond decision by an immigration judge involves the weighing of evidence and is discretionary. § 1226(a); *Jennings v. Rodriguez,* 583 U.S. 281, 295 (2018). Discretionary bond decisions, such as the determination that a noncitizen is a flight risk, are generally not reviewable by a federal district court. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). "This provision precludes the Court from reviewing the IJ's decision that denied bond because Petitioner was a flight risk." *Mwangi v. Terry*, 465 F. App'x 784, 786–87 (10th Cir. 2012) ("Therefore, to the extent Mr. Mwangi challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.") (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)); *Jennings,* 583 U.S. at 295 (explaining that § 1226(e) bars a challenge to a discretionary judgment or decision by the Attorney General

regarding detention or release but does not preclude challenges to the statutory framework); *see also Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision…"). Here, the immigration judge denied bond, reasoning that he is a flight risk. The Court lacks authority to review the immigration judge's discretionary determination.

However, the Court has discretion to review constitutional violations. For example, a noncitizen is entitled at least to fundamental fairness at a bond hearing. "An alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests." *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022). Here, Petitioner asserts that the immigration judge's determination was not individualized. He notes that the immigration judge only expressly analyzed limited *Guerra* factors, and that the weight of the evidence would suggest he should be released.

Although Petitioner's counsel skillfully attempts to portray the immigration judge's alleged errors as demonstrating his bond determination was not individualized, the Court disagrees. The immigration judge's decision was clearly individualized. A bond hearing was held at which the immigration judge received evidence and counsel's proffers and argument. The immigration judge engaged with counsel by asking questions. Ultimately, the immigration judge concluded, after evidence and argument was presented, that Petitioner was a flight risk.

Petitioner asserts that the immigration judge's decision focusing on limited *Guerra* factors demonstrates that the decision was not individualized. Petitioner has not demonstrated that any

mis-weighing of the *Guerra* factors or evidence constitutes a due process violation, rather than mere error. At the bond hearing, the immigration judge must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In Re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). The immigration judge may also consider various discretionary factors, including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). The immigration judge has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Id.* at 40. The burden is on the detainee to demonstrate that release on bond is warranted. *Id.* The BIA case law following *Guerra* has either broadened these factors or taken an expansive view of these factors, allowing the immigration judge to consider whether a detainee has a valid or credible sponsor and the immigration status of a sponsor. *See Matter of Dobrotvorskii*, 29 I. & N. Dec. 211, 213 (BIA 2025); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 807 (BIA 2020). An immigration judge may also consider a detainee's immigration status and the likelihood that any application for relief will be granted. *Matter of R-A-V-P-*, 27 I. & N. Dec. at 807 (allowing immigration judge to consider a detainee's immigration status and likelihood that an application for relief, such as application for asylum, will be approved). Here, the immigration judge grounded his decision in certain *Guerra* factors and other factors identified above. As explained above, an immigration judge may consider whether a

petitioner's relief is speculative. Petitioner has not demonstrated that an immigration judge is required to mechanically address the various factors identified in BIA case law. Any mis-weighing of the factors or evidence would at most be error addressable on appeal, not a due process violation.

Petitioner asserts that the immigration judge's conclusion that his relief from removal was speculative was so erroneous that it amounts to a constitutional violation. The Court disagrees. It appears that Petitioner believes that he may apply to adjust his status based on the citizenship of his daughter. But at least as of the filing of the Petition, his daughter was not yet a citizen. The immigration judge's decision or fact finding was not so erroneous as to amount to a due process violation.

In sum, while Petitioner may or may not show that the immigration judge erred in his bond decision, he does not demonstrate that the bond decision was not individualized.

## III. <u>The immigration judge was not required to place the burden on Respondents at the bond hearing</u>.

Petitioner asserts that the immigration judge violated due process by failing to place the burden of proof at the bond hearing on Respondents. The Court disagrees and concludes that procedural due process did not require the immigration judge to place the burden on the Government at a bond hearing under 8 U.S.C. § 1226(a).

As this Court has previously explained in *Montero Cordova*, due process does not require that the burden be placed on the Government when a noncitizen is detained under § 1226(a). The Court adopts and incorporates herein its reasoning in *Montero Cordova v. Noem*, No. 1:26-CV-00526-KWR-DLM, 2026 WL 867689, at *12-15 (D.N.M. Mar. 30, 2026) and denies Petitioner's due process claim based on burden-shifting. As explained in *Montero Cordova,* the *Mathews* factors do not warrant shifting the burden at any bond hearing to the Government under the

circumstances of this case. And Petitioner does not establish that a prior due process violation required the immigration judge to place the burden of proof on the Respondents.

Section 1226(a), at issue here, does not mention the burden of proof. It states in part: "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(a) gives Respondents discretion to detain, release on bond, or parole a noncitizen. Generally, the release or bond decision is discretionary. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). The text of § 1226(a) does not place the burden on the Respondents to justify detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (noting that "[n]othing in § 1226's text ... supports the imposition" of "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary").

Although the plain language of the statute fails to clarify who bears the burden, relevant regulations provide the following:

> Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.

8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) (2026). The phrase "provided that the alien must demonstrate to the satisfaction of the officer" indicates that the noncitizen bears the burden. This interpretation aligns with BIA precedent that found that the burden is on the noncitizen. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) ("The burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond."); *see also In re Adeniji*, 22 I. & N. Dec.

1102, 1116 (B.I.A. 1999) ("Pursuant to 8 C.F.R. § 236.1(c)(8), the [noncitizen] must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings."). Therefore, the regulations place the burden on the noncitizen.

The Supreme Court has touched on burden allocation under § 1226(a), but it has merely noted that the text does not indicate when each party should bear the burden. *See Jennings*, 583 U.S. at 306 (noting that "[n]othing in § 1226's text ... supports the imposition" of "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary").

The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. In the immigration context, "the nature of that protection may vary depending upon [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694. Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). However, such protections need not equate to those afforded to citizens. *Demore*, 538 U.S. at 522 ("[T]his Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.").

In considering a due process claim, the Court considers whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2001); *see also Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.'" (quoting *Arambula-Medina*, 572 F.3d at 828)). The Court assumes that Petitioner has a liberty interest in freedom from imprisonment. But the Court notes that the statute and

authority above does not place the burden on the Government to show flight risk or danger. The Court proceeds to whether Petitioner received adequate process.

In analyzing a procedural due process claim the Court must examine the adequacy of the procedure to ensure that the deprivation meets the demands of the Constitution. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). In determining what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Petitioner received a bond hearing in this case. Therefore, at issue here is whether the due process clause requires that a petitioner who has already received a bond hearing under § 1226(a) be given an additional bond hearing with the burden shifted to Respondents. The Court concludes it does not.

The first *Mathews* factor considers the private interest at stake. Petitioner's basic interest in being free from detention is at stake. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (finding that freedom from detention is "the most elemental of liberty interests"). However, Petitioner has already received the procedures authorized by Congress, a bond hearing under § 1226(a) where an immigration judge concluded he was a flight risk. As explained above, § 1226(a) does not place the burden on the Government, and the regulations place the burden on the Petitioner. Overall, this factor weighs in his favor.

The second *Mathews* factor considers the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards. Here, Petitioner received a bond hearing under § 1226(a), at which the immigration judge concluded he was a flight risk. Petitioner

asserts that there is a risk of erroneous deprivation because evidence suggests he is neither a flight risk nor a danger. He points to alleged mis-weighing of the evidence or factors by the immigration judge.

Whether the Court would make the same detention decision is not at issue in this case. Petitioner already received the fundamental features of due process—notice and an opportunity to be heard. *See Mathews*, 424 U.S. at 333, 96 S.Ct. 893 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " (citations omitted)). Moreover, a bond hearing under § 1226(a) is generally a sufficient process to mitigate the risk of erroneous deprivation. *See, e.g., Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022). Here, the bond hearing shows that Petitioner had skilled counsel at this bond hearing who made a very good proffer. Therefore, Petitioner has failed to carry his burden under the second factor to show a risk of erroneous deprivation of his rights.

The final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. When considering the Government's interest, the Supreme Court has instructed that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Detention has been deemed a valid part of sovereign prerogative "necessary to give effect to the provisions for the exclusion or expulsion of aliens." *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (citation modified). Thus, the Government's interest in enforcing its immigration policies is considerable.

Here, Petitioner does not fully analyze the third factor. Although the fiscal and administrative burdens of a burden-shifting requirement would likely be minimal, the legislature's silence on a burden-shifting requirement indicates that any judicially imposed burden-shifting requirement here would be displacing a congressional policy choice that the burden remain with Petitioner. *See E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 52 (2025) ("Statutory silence is generally 'inconsistent with the view that Congress intended to require a special, heightened standard of proof.' " (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991))). Thus, the significant weight afforded to the executive and legislature over immigration matters renders the third *Mathews* factor favorable to Respondents. Respondents also have a strong interest in detention while the removal proceedings are pending. *Miranda v. Garland*, 34 F.4th 338, 364-65 (4th Cir. 2022). Removal proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character." *Wong Wing v. United States*, 163 U.S. 228 (1896). Thus, the Respondents' interest here is strong.

Balancing the *Mathews* factors, the Court concludes that Petitioner is not entitled to an additional bond hearing where the Respondents bear the burden of showing he is a flight risk or danger. In sum, Petitioner has not argued or demonstrated a risk of erroneous deprivation if the burden of proof were not shifted to Respondents at a bond hearing. Moreover, he did not account for the Respondents' substantial interest in detention pending removal proceedings. Considering the *Mathews* factors and Petitioner's arguments, the Court concludes that Petitioner has not demonstrated that he is entitled to burden-shifting at an additional bond hearing.

The Court notes that some persuasive cases are in line with the Court's reasoning, although there appears to be a circuit split on this issue.[1] The Second Circuit held that detainees are entitled to an additional bond hearing with burden-shifting after their detention becomes prolonged. *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020). Similarly, the First Circuit concluded that, where a party received a bond hearing under § 1226(a), the district court did not err in ordering an additional bond hearing with the burden shifted to the Government to show dangerousness. In deciding that burden-shifting was necessary, the First Circuit noted the risk of lengthy or prolonged detention under § 1226(a) while a decision on removal is pending. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 29–30 (1st Cir. 2021). Thus, the First Circuit affirmed the district court's order for a new bond hearing where the Government bore the burden of proof.

On the other hand, the Third and Ninth Circuits found that due process or § 1226(a) did not entitle the petitioner to an additional bond hearing with a shifted burden after detention becomes prolonged. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213–14 (9th Cir. 2022). Similarly, where a noncitizen already received a bond hearing under § 1226(a), the Fourth Circuit in *Miranda* reversed a district court's decision to order an additional bond hearing with the burden placed on the Government. *Miranda v. Garland*, 34 F.4th 338, 350 (4th Cir. 2022).

The Court agrees with the Third, Fourth, and Ninth Circuits, as explained in the balancing of the *Mathews* factors above. Petitioner has not demonstrated that due process requires the burden to be placed on the Government at a bond hearing under § 1226(a).

---

[1]The cases below differ in some respects and are not exactly on point to the issue in this case. Some of these cases consider whether due process requires the burden to be placed on the respondents generally. However, others consider whether due process requires burden-shifting based on a prior due process violation, such as prolonged detention.

## CONCLUSION

Petitioner has demonstrated a violation of due process and *Accardi* based on his warrantless arrest. Therefore, he is entitled to release.

**IT IS THEREFORE ORDERED** that Petitioners' Petition (Doc. 1) is hereby **GRANTED** in part for the reasons described in this Order. The Court interprets the Respondents' Motion to Dismiss as a response to the habeas petition, and the Clerk of Court shall terminate the pending Motion to Dismiss (Doc. 8).

**IT IS FURTHER ORDERED** that Respondents shall immediately release Petitioner.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order (doc. 2) is **DENIED AS MOOT**.

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE